**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

WAGNER MACIEL,

Plaintiff,

- against -

BMW OF NORTH AMERICA, LLC,

Defendant.
----------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 20-458 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

Plaintiff Wagner Maciel commenced this action alleging claims pursuant to the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, the U.C.C., New York General

Business Law § 349, and common law fraud which stem from Plaintiff's purchase of a BMW

vehicle in January 2012.  *See generally* Amended Complaint ("Am. Compl.") [DE 11].

Defendant BMW of North America, LLC has moved to dismiss the Amended

Complaint,pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter

jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim.  *See* Memorandum of Law

in Support of Defendant BMW of North America, LLC's Motion to Dismiss the Plaintiff's First

Amended Complaint ("Def.'s Mem.") [DE 18].  Defendant principally argues the Court lacks

jurisdiction because the Amended Complaint does not plausibly allege that the amount in

controversy requirement pursuant to either the Magnus-Moss Warranty Act or 28 U.S.C. § 1332

is satisfied.  *See generally id.*  Plaintiff opposes Defendant's motion, primarily on the grounds

that the damages pled could meet the jurisdictional amount required under either statute.  *See*

*generally* Plaintiff's Memorandum of Law in Opposition to Defendant BMW of North America,

LLC's Motion to Dismiss the First Amended Complaint ("Pl.'s Opp'n") [DE 26].  Defendant

submitted a Reply.  *See* Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of Defendant, BMW of North America, LLC's Motion to Dismiss the Plaintiff's First Amended Complaint ("Def.'s Reply") [DE 27].

Judge Seybert referred Defendant's motion to dismiss to this Court for a Report and Recommendation as to whether Defendant's motion should be granted.  For the reasons which follow, the Court respectfully recommends to Judge Seybert that Defendant's motion be GRANTED and that the Amended Complaint be dismissed in its entirety.

## II.    BACKGROUND

### A.    Factual Background

The following factual allegations have been taken from the Amended Complaint. All facts alleged by Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to Plaintiff as the non-moving party.  *See, e.g.*, *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018); *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *McGrath v. Bayer HealthCare Pharms. Inc.*, 393 F. Supp. 3d 161, 166 (E.D.N.Y. 2019); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

Plaintiff is a New York resident.  Am. Compl. ¶ 11.  Defendant is a Delaware limited liability company with its principal place of business in New Jersey.  *Id.* ¶ 12.  Defendant is also a wholly owned subsidiary of BMW (US) Holding Corp., a Delaware corporation with its principal place of business in New Jersey.  *Id.*  Defendant is engaged in the business of importing, assembling, marketing, distributing, and warranting BMW vehicles in New York and throughout the United States.  *Id.* ¶ 13.  Vehicles are sold by Defendant through a network of independently owned dealerships across the country.  *Id.*

On January  27, 2012, Plaintiff purchased a new 2012 BMW X5, vehicle identification number 5UXZV8C58CL425188 (the "Vehicle") from Prestige BMW in Ramsey, New Jersey. *Id.* ¶ 15.  Prestige BMW is an authorized BMW dealer.  *Id.*  The price for the Vehicle was $72,235.88, including options, fees, taxes, and other charges.  *Id.* ¶ 16.  Within a few months of his purchase of the Vehicle, Plaintiff observed that the engine consumed an excessive amount of oil which required him to add one quart of oil every 600 miles "throughout the warranty period and well before the Defendant's recommended oil change intervals."  *Id.* ¶ 17.  Defendant's "New Vehicle Limited Warranty," which accompanied the sale of the Vehicle, states that Defendant "promised to repair or replace components found to be defective in material or workmanship during the 4-year/50,000-mile [warranty] following such Vehicle delivery to consumer."  *Id.* ¶ 26.  More specifically, the New Vehicle Limited Warranty provides:

> **Warrantor**
> BMW of North America, LLC (BMW NA) warrants 2012 U.S.-specification SAVs distributed by BMW NA or sold through the BMW NA European Delivery Program against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser.
>
> **Warranty Period**
> The warranty period is 48 months or 50,000 miles, whichever occurs first.
>                      . . . .
>
> **Warranty Coverage**
> To obtain warranty service coverage, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW SAV center in the United States or Puerto Rico, during normal business hours.  The authorized BMW SAV center will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.  The decision to repair or replace said part(s) is solely the prerogative of BMW NA.  Parts for which replacements are made become the property of BMW NA.

> In all cases, a reasonable time must be allowed for warranty repairs to be completed after the vehicle is received by the authorized BMW SAV Center.

*See id.* ¶ 28.[1]  Defendant controls the execution of all warranty repairs by its authorized dealers, who are its agents for purposes of vehicle repairs.  *Id.* ¶ 29.  As such, the Amended Complaint alleges that Plaintiff is a third-party beneficiary of any contracts between Defendant and its authorized dealers.  *Id.* ¶ 31.

During the warranty period, Plaintiff complained to an authorized BMW dealer, namely, BMW of Oyster Bay in Oyster Bay, New York, that the Vehicle consumed excessive amounts of engine oil.  *Id.* ¶ 18.  BMW of Oyster Bay told Plaintiff that the oil consumption he complained of was normal and that it did not offer any repairs to resolve this issue.  *Id.* ¶ 19.  Plaintiff has since spent approximately $3,700 in out-of-pocket costs associated with the Vehicle's engine oil consumption and the cost to replace the Vehicle's engine would range between $12,500 and $15,000.  *Id.* ¶¶ 21-22.  On July 20, 2018, Plaintiff's counsel sent Defendant a letter that reiterated the Plaintiff's complaints with respect to the excessive oil consumption and that the defect continued to persist.  *Id.* ¶ 23.  In that same letter, Plaintiff also revoked her acceptance of the Vehicle.  *Id.*

---

[1]     Although a copy of the New Vehicle Limited Warranty is not attached as an exhibit to the Amended Complaint, the Court notes that this document is attached to Plaintiff's opposition to the instant motion to dismiss.  *See* DE 19-1, at 21.  The Court takes judicial notice of the New Vehicle Limited Warranty because it is a document that is integral to the Amended Complaint.  *See Power Up Lending Grp., Ltd. v. All. Bioenergy Plus, Inc.*, No. 18-3601, 2019 WL 1322621, at *1 (E.D.N.Y. Feb. 28, 2019) ("The Court notes that all parties have attached the agreements at issue as exhibits to their briefs.  Defendants have attached the Notes for each transaction, and Plaintiff has submitted the Securities Purchase Agreements for each transaction.  Accordingly, because the documents are integral to the Complaint and provided by the parties, the Court will consider them." (internal citations omitted)), *report and recommendation adopted*, 2019 WL 1317456 (E.D.N.Y. Mar. 22, 2019).

The Amended Complaint then goes into great detail about the specifics of the engine oil defect which plagued Plaintiff's vehicle, and those details need not be repeated here.  *See id.* ¶¶ 33-64.  The particular engine in Plaintiff's vehicle is an "N63" engine and apparently hundreds of other customers complained to BMW about excessive oil consumption in their vehicles which are equipped with this same engine.  *See id.* ¶¶ 37, 58.  It has become "widely recognized that N63 engines consume excessive amounts of engine oil" and that Defendant did not disclose the defect nor the fact that many purchasers of vehicles with N63 engines "have become upset about the excessive oil consumption."  *See id.* ¶¶ 38, 44, 48.  Plaintiff would not have purchased the Vehicle or would have paid significantly less for it had he known he would be required to regularly purchase and add large volumes of engine oil to prevent the Vehicle's engine from failing.  *Id.* ¶ 73.

The Amended Complaint asserts five causes of action:  (1) breach of express warranty pursuant the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1); (2) breach of express warranties as set forth in the New Vehicle Limited Warranty; (3) breach of implied warranty of merchantability pursuant to both the Magnuson-Moss Warranty Act § 2308 and New Jersey state law, N.J. Stat. Ann. § 12A:2-314; (4) deceptive acts and practices pursuant to New York General Business Law § 349; and (5) fraudulent concealment.  *See id.* ¶¶ 93-152.  Plaintiff seeks an order approving the revocation of acceptance or rescission of his purchase of the Vehicle, monetary damages, equitable relief in form of repairs to the defective Vehicle or a new or replacement automobile, consequential damages, punitive damages, and reasonable attorney's fees.  *See id.* at 29-30.

The Amended Complaint also contains a section entitled "Tolling of Statute of Limitations" in which Plaintiff appears to anticipate arguments that Defendant would assert in a

responsive pleading regarding the timeliness of Plaintiff's claims. *See id.* at 17-19. In particular, the Amended Complaint provides four arguments on this issue: (1) "Defendant is estopped from relying on any statutes of limitations in defense of this action" because it fraudulently concealed the Vehicle's defect from plaintiff; (2) Plaintiff's claims are tolled pursuant to the "discovery rule" because "Plaintiff could not have discovered through the exercise of reasonable diligence that the Vehicle contained the oil consumption defect within the time period of any applicable statute of limitations;" (3) Defendant was under a continuous duty to disclose the true character, quality and nature of the Vehicle to Plaintiff, actively concealed this information and never intended to repair the subject engine, and should be estopped from relying upon any statutes of limitations; and (4) Plaintiff's claims have been tolled pursuant to class-action tolling because Plaintiff opted out of a class action settlement in the U.S. District Court for the District of New Jersey in *Bang v. BMW of North America, LLC*, CV 15-6945, and was given leave by that court to file an individual action. *See id.* ¶¶ 74-92.

### B. Procedural Background

Plaintiff commenced this action on January 27, 2020. *See generally* Complaint [DE 1]. Defendant filed its first pre-motion conference request to Judge Seybert on February 27, 2020 for purposes of moving to dismiss the Complaint. *See* DE 9. In response, Plaintiff expressed an intent to file an amended complaint. *See* DE 10. As such, Judge Seybert denied Defendant's request for a pre-motion conference and directed Plaintiff to file an amended complaint, as of right, by April 9, 2020. *See* March 9, 2020 Electronic Order. Plaintiff filed an Amended Complaint on April 1, 2020. *See generally* Am. Compl.

Following Defendant's second pre-motion conference request to Judge Seybert, the instant motion to dismiss was filed on May 29, 2020. *See* Notice of Motion to Dismiss [DE 17];

Memorandum of Law in Support of Defendant, BMW of North America, LLC's Motion to Dismiss the Plaintiff's First Amended Complaint ("Def.'s Mem.") [DE 18]. Plaintiff filed opposition to Defendant's motion on June 25, 2020. *See* Plaintiff's Memorandum of Law in Opposition to Defendant BMW of North America, LLC's Motion to Dismiss the First Amended Complaint ("Pl.'s Opp'n") [DE 26]. Defendant submitted a reply brief. *See* Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of Defendant, BMW of North America, LLC's Motion to Dismiss the Plaintiff's First Amended Complaint ("Def.'s Reply") [DE 27].

On December 17, 2020, Plaintiff filed a notice of supplemental authority which directed the Court's attention to three decisions rendered in *Harris et al. v. BMW of North America, LLC*, CV 19-16 (E.D. Tex. Dec. 3, 2020) [DE 96, 97, 98]. *See* Plaintiff's Notice of Supplemental Authority ("Pl.'s Supp. Auth.") [DE 30]. Plaintiff contends that the plaintiffs in *Harris* "brought near-identical claims against the same Defendant" related to the engine oil consumption defect in N63 engines. *See id.* at 1. In ruling on the defendant's motions for summary judgment, Plaintiff argues that the *Harris* court denied the motions because geniune issues of material fact existed as to fraudulent concealment tolling and that the defendant did not demonstrate any genuine issues of material fact with respect to the plaintiff's breach of warranty and unfair trade practices claims. *See id.* Defendant filed a motion to strike Plaintiff's notice on December 30, 2020, arguing that it constitutes an impermissible sur-reply. *See* Defendant's Motion to Strike ("Def.'s Mot. Strike") [DE 31]. Defendant also argues that the *Harris* decisions are not relevant because *Harris* reviewed the defendant's motion pursuant to a summary judgment standard and not pursuant to Rule 12. *See id.* at 1. Plaintiff filed opposition to Defendant's motion to strike and argues that the Court should permit the notice of supplemental authority pursuant to *Delgado v.*

*Ocwen Loan Servicing, LLC. See* Plaintiff's Response in Opposition to Motion to Strike ("Pl.'s Opp'n II") [DE 32] (citing *Delgado v. Ocwen Loan Servicing, LLC*, No. 13 CV 4427, 2016 WL 4617159, at *7 (E.D.N.Y. Sept. 2, 2016)).

In *Delgado*, the court stated the following:

> The court notes that while its individual rules require parties to file motion papers in accordance with a court-approved briefing schedule, there is no such requirement for notices of supplemental authority. While it would be ideal for parties to discover and submit all relevant case law before a motion is fully briefed, "[i]t is fairly standard practice for parties to occasionally send letters or to otherwise file supplemental authority after briefing is complete." *Duprey v. Twelfth Judicial Dist. Court*, No. 08-CV-756 (JB), 2009 WL 2951023, at *3 (D.N.M. Aug. 10, 2009). Furthermore, although cases from other circuits are not controlling legal authority, the court may find the reasoning of other courts helpful in applying the appropriate legal standards to the facts of this case. Therefore, the court will take note of those cases and consider them to the extent they are relevant to the arbitration motion.

*Delgado*, 2016 WL 4617159, at *7. Defendant's motion to dismiss was filed pursuant to Judge Seybert's Individual Rules which provide that a briefing schedule will be set for dismissal motions at the pre-motion conference and that the schedule cannot be changed by the parties without permission from the Court. *See* Judge Seybert's Individual Practice Rule III(B) and (C). Similar to *Delgado*, there is no requirement in Judge Seybert's rules that notices of supplemental authority need to be filed in accordance with a briefing schedule.

## C.    The Parties' Positions

### 1.    *Defendant's Motion*

Defendant moves for dismissal of the Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). *See generally* Def.'s Mem. First, Defendant argues that pursuant to the Magnuson Moss Warranty Act ("MMWA"), a district court's exercise of subject matter jurisdiction is precluded

"for claims less than '$50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.'" *Id.* at 3 (quoting 15 U.S.C. § 2310(d)(3)(B)). According to Defendants, the amount in controversy "must be satisfied on the basis of claims brought pursuant to the MMWA, *i.e.*, only breach of warranty claims" and "pendant state law claims . . . cannot be used to satisfy the jurisdictional amount under the MMWA." *Id.* at 3-4. It is Defendant's position that Plaintiff cannot show that the alleged damages exceed $50,000 pursuant to the MMWA because the New Vehicle Limited Warranty and governing law limit the Plaintiff's recoverable damages. *Id.* at 4.

Next, Defendant argues that Plaintiff does not satisfy the amount in controversy requirement of 28 U.S.C. § 1332, which requires complete diversity of citizenship between the parties and damages in excess of $75,000. *See id.* at 3-10. Defendant contends that rescission is an equitable remedy "to be invoked only when there is lacking complete adequate remedy at law and where the status quo may be substantially restored." *Id.* at 4. According to Defendant, privity of contract is also a pre-requisite for a rescission claim. *Id.* at 5. As such, Defendant argues that Plaintiff is not in privity of contract with Defendant because Plaintiff purchased the Vehicle from a third-party dealer, Prestige BMW, and that Plaintiff's continued use of the Vehicle for eight and a half years is inconsistent with claims for rescission. *Id.* Defendant then argues that Plaintiff's requested relief of revocation of acceptance is also not available under the circumstances here because alleged excessive oil consumption did not substantially impair the value of the Vehicle and Plaintiff's acceptance of the Vehicle was not "reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." *Id.* at 5-8. Defendant also argues that the pre-litigation demand letter sent by Plaintiff to Defendant in which Plaintiff claims to revoke his acceptance of the Vehicle "does not constitute a timely and

reasonable revocation because his continued use of the Vehicle is entirely inconsistent with revocation principles." *Id.* at 7 (citing FAC ¶ 69). To the extent Plaintiff seeks incidental and consequential damages which consist of $3,700 in out-of-pocket expenses, Defendant contends that the New Vehicle Limited Warranty disclaims such damages. *Id.* at 8. With respect to punitive damages, Defendant argues that in a similar action, the court rejected a punitive damages claim against Defendant because it did not have any direct conduct with the plaintiff and its actions did not amount to malicious behavior. *Id.* at 8-9.

Defendant then contends that Plaintiff's claims are untimely. *See id.* at 11-15. According to the Defendant, Plaintiff's claims accrued upon tender of delivery of the Vehicle, which occurred on January 27, 2012. *Id.* at 11. Although the MMWA does not expressly provide a statute of limitations period, Defendant maintains that New York law provides a four-year statute of limitations for breach of warranty claims and Plaintiff's New York GBL claim carries a three-year statute of limitations. *Id.* As such, Defendant argues that these claims accrued on the date of tender of the Vehicle and should have been filed by January 27, 2015 and January 27, 2016, respectively. Defendant further argues that none of the four tolling doctrines asserted in the Amended Complaint apply to Plaintiff's claims. *See id.* at 11-15. Lastly, Defendant claims that Plaintiff failed to allege the necessary elements for causes of action for breach of express warranty, breach of the implied warranty of merchantability, unlawful deceptive acts under GBL § 349, and fraudulent concealment. *See id.* at 16-21.

### 2.    *Plaintiff's Opposition*

Plaintiff contends that this Court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff's alleged damages "may well exceed $75,000." Pl.'s Opp'n at 5. Plaintiff's requested relief consists of (1) breach of warranty damages which are

measured as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" or "the cost of repair [which] is a sufficient proxy for the difference between the market value of the defective car at the time of delivery and what the car's value would have been if it were as warranted," plus incidental and consequential damages, (2) economic damages pursuant to NYGBL § 349, (3) treble and punitive damages due to Defendant's allegedly false, misleading, and deceptive acts, and (4) rescission of the purchase of the car and revocation of acceptance. *Id.* at 5-6. Plaintiff thus argues that the $72,235.88 purchase price for the Vehicle, $3,700 in out-of-pocket costs, plus "contract rescission, revocation of acceptance, actual damages, as well as treble and punitive damages" is sufficient to invoke diversity jurisdiction. *See id.* at 6. Alternatively, Plaintiff argues that the Court has jurisdiction under the MMWA, which requires the amount in controversy to exceed $50,000, because "Plaintiff alleged his breach of warranty damages, i.e., the cost of repair, are $15,000 and out of pocket costs are $3,700[,] . . . treble and punitive damages, which would increase his damages to $56,100, in excess of the $50,000 jurisdictional minimum[,] or . . . Plaintiff could obtain a refund of the contract price of $72,235.88." *Id.* at 7.

Next, Plaintiff disagrees with Defendant's contention that Plaintiff's claims began to accrue on the date of tender of the Vehicle, namely, January 27, 2012, and reiterates the arguments set forth in the Amended Complaint which pertain to tolling doctrines. *Id.* at 9-17; *see* Am. Compl. at 17-19. Lastly, Plaintiff asserts that the Amended Complaint sufficiently pleads claims for breach of express warranty, breach of implied warranty, the MMWA, NYGBL § 349, and fraudulent concealment. *See* Pl.'s Opp'n at 17-25.

### 3.    *Defendant's Reply*

Defendant concedes that the value of Plaintiff's rescission and revocation damages which are $72,235.88 and $3,700, exceeds $75,000.  Def.'s Reply at 1.  However, Defendant repeats its contention that the rescission of a purchase agreement cannot be had against a remote distributor like Defendant who is not in privity of contract with the buyer.  *Id.*  Defendant then claims that Plaintiff did not adequately respond to its argument that the pre-litigation demand letter was not a reasonable or timely revocation of acceptance.  *Id.* at 2.  According to Defendant, Plaintiff failed to validly revoke his acceptance of the Vehicle because "[t]he FAC contains no fewer than fifteen allegations that the alleged oil consumption defect was widely known, by consumers and industry professionals alike, in 2011—months before Plaintiff bought his Vehicle."  *Id.*  In light of that information, Defendant argues that Plaintiff should have known about any defect prior to his purchase of the Vehicle if he exercised due diligence.  *Id.*  Next, Defendant notes that Plaintiff does not address Defendant's argument that incidental and consequential damages are not unavailable under the New Vehicle Limited Warranty.  *Id.* at 3.  Instead, Defendant maintains that Plaintiff's opposition states a claim for compensatory damages consisting of a $15,000 engine replacement and out-of-pocket expenses for which Plaintiff has not provided any legal justification and which are not recoverable in this case.  *Id.* 3-4.  Lastly, Defendant repeats its arguments that Plaintiff's claims are time-barred and not plausibly alleged.  *Id.* at 4-6.

## III.    S<small>TANDARDS OF</small> R<small>EVIEW</small>

### A.    Fed. R. Civ. P. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  While the

standard of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction and under Rule 12(b)(6) for failure to state a claim are inherently similar, *Davis v. JP*

*Morgan Chase Bank*, No. 14-CV-6263, 2016 WL 1267800, at *3 (S.D.N.Y. Mar. 30, 2016),

unlike the resolution of a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion to

dismiss may refer to evidence outside the pleadings. *Makarova*, 201 F.3d at 113 (citing *Kamen*

*v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)). Moreover, "[a] plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562

(2d Cir. 1996)); *Parker-Leon v. Middle Vill. Preparatory Charter Sch.*, No. 17-CV-4548, 2019

WL 2394211, at *2 (E.D.N.Y. June 6, 2019) (explaining that "jurisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it") (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d

Cir. 1998)); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the

standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists.").

      **B.**      **Fed. R. Civ. P. 12(b)(6)**

      In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally

construe the claims, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co.,*

*L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New*

*Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility

standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub*

*nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see also id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied upon heavily in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

## IV.    DISCUSSION

Where, as here, Defendant has moved to dismiss the Complaint based on Rule 12(b)(1) as well as other grounds, "the [C]ourt should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969)); *Thompson v. Ocwen Fin. Corp.*, No. 3:16-cv-01606, 2018 WL 513720, at *2 (D. Conn. Jan. 23, 2018) (explaining that it is well-established that "federal courts should ordinarily resolve any doubts about the existence of federal subject matter jurisdiction prior to considering the merits of a complaint" (citing *Rhulen*, 896 F. 2d at 678)); *Calverton Hills Homeowners Assn., Inc. v. Nugent Bldg. Corp*., 2:17-CV-03916, 2017 WL 6598520, at *4 (E.D.N.Y. Dec. 26, 2017) (same).

### A.    Subject Matter Jurisdiction

Defendant argues that Plaintiff has failed to demonstrate federal question jurisdiction pursuant to the Magnuson-Moss Act because Plaintiff has not demonstrated a legitimate claim for damages that exceeds the MMWA's $50,000 jurisdictional threshold. *See* Def.'s Mem. at 3-10. In response, Plaintiff articulates two damages computations to surpass the MMWA's

$50,000 requirement:  "Plaintiff alleged . . . breach of warranty damages, i.e., the cost of repair, are $15,000 and out of pocket costs are $3,700.  Plaintiff requests treble and punitive damages, which would increase his damages to $56,100, in excess of the $50,000 jurisdictional minimum. Alternatively, Plaintiff could obtain a refund of the contract price of $72,235.88, which is a remedy available . . . in New York."  Pl.'s Oppn at 7-9.  Plaintiff also argues that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and that he has satisfied that provision's higher $75,000 jurisdictional threshold.  *Id.* at 5-7.  For the reasons Defendant contends Plaintiff failed to meet the MMWA's amount in controversy requirement, Defendant similarly argues that Plaintiff failed to meet § 1332's amount in controversy requirement.  Def.'s Mem. at 10.

### 1.    *Magnuson-Moss Act*

The Magnuson-Moss Act allows individual consumers to sue warrantors "for damages and other equitable relief" for failure to comply with written or implied warranties.  *See* 15 U.S.C. § 2310(d)(1).  Although an action under the MMWA carries concurrent jurisdiction in state and federal court, federal court jurisdiction is restricted to those suits that can satisfy two requirements:  (1) the amount in controversy of any individual claim must be at least $25; and (2) the overall amount in controversy must be at least $50,000, excluding interest and costs.  *See Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 169 (E.D.N.Y. 2016) (citing *Wood v. Maguire Auto., LLC*, 508 Fed. App'x 65, 65 (2d Cir. 2013)).

"Although a plaintiff invoking federal jurisdiction must demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied," the Second Circuit has recognized a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (first quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d

Cir. 1994); then quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)).  A defendant may rebut this presumption by demonstrating "to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Id.* (quoting *Colavito*, 438 F.3d at 221).

Pursuant to § 2304 of the MMWA, when a warrantor breaches a "full" written warranty, the plaintiff is entitled to a refund or replacement without charge for the defective product. *Id.* at 223 (citing 15 U.S.C. § 2304); *see also* 15 U.S.C. § 2303(a)(1) (stating that a written warranty shall be designated as "full" where it "meets the Federal minimum standards for warranty set forth in section 2304").  However, where, as here, the warrantor made only a "limited warranty," the MMWA requires courts to look to state law to determine the applicable measure of damages for purposes of the MMWA's amount-in-controversy inquiry.  *Pyskaty*, 856 F.3d at 223-24 (citing *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014)).

Plaintiff asserts claims against Defendant for breach of express and implied warranties under the MMWA.  *See* Am. Compl. ¶¶ 93-100, 110-118.  The Court will now evaluate the damages Plaintiff seeks pursuant to the MMWA utilizing state law.  The categories of damages Plaintiff seeks consist of actual damages, revocation of acceptance, rescission, incidental damages, consequential damages, and punitive damages.

### a.      Actual Damages

Actual damages for a breach of warranty claim are measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  *See* N.Y. U.C.C. § 2-714.  Plaintiff argues that the "cost of repair is a sufficient proxy for the difference between the market value of the defective car at the time of

delivery and what the car's value would have been if it were as warranted." *See* Pl.'s Opp'n at 5-6 (citing *Carbo Indus. Inc. v. Becker Chevrolet Inc.*, 112 A.D.2d 336, 491 N.Y.S.2d 786 (App. Div. 1985)).  The Amended Complaint alleges that the cost to repair the Vehicle by replacing its engine "ranges from \$12,500 to \$15,000. Am. Compl. ¶ 21.  Based upon this assertion, it appears that Plaintiff is attempting to invoke the "special circumstances" exception set forth under the UCC.  Plaintiff cites *Carbo Industries* which held that "the cost of replacing the defective engine with a working secondhand engine could have been found to be a reasonable cost in rendering the car usable." *Carbo Indus.*, 112 A.D.2d at 340.  However, as noted by Defendant, the plaintiff in *Carbo* actually incurred the cost of replacing the engine in the defective vehicle at issue whereas here, Plaintiff included a speculative allegation that a replacement engine for the Vehicle would cost between \$12,000 and \$15,000. *See id.*; Def.'s Reply at 3-4 n.5.  As such, the Amended Complaint does not allege that Plaintiff had the engine replaced in the Vehicle, the cost of which Plaintiff argues as the basis for the actual damages component of his breach of warranty claims.[2]  Accordingly, the Court finds that Plaintiff has not plausibly alleged actual damages and declines to include the requested \$12,000 to \$15,000 actual damages in calculating whether Plaintiff has satisfied the MMWA's \$50,000 threshold.

### b.    Rescission

"Under New York law, a plaintiff may obtain rescission—in lieu of actual damages—when a breach of contract is either 'material or willful' or 'so substantial and fundamental' that it 'strongly tends to defeat' the purpose of the contract. *See Pyskaty*, 856 F.3d at 227 (quoting

---

[2]    The Court notes that Plaintiff also argues his \$3,700 in out-of-pocket costs associated with the Vehicle's oil consumption are actual damages. *See* Pl.'s Opp'n at 6. However, the Court considers these costs to be either incidental or consequential damages and discusses them in Section IV.A.1.d, *infra*.

*Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998)).  Because rescission is an equitable remedy, it is available "only if damages would not be a 'complete and adequate' remedy and 'the status quo may be substantially restored' by equitable relief." *Id.* (quoting *Rudman v. Cowles Commc'ns, Inc.*, 330 N.Y.S.2d 33, 43, 280 N.E.2d 867, 874 (1972)).  The Second Circuit has held that the value of a rescission remedy is equal to the full purchase price of the vehicle as set forth in a purchase agreement. *See id.* at 227-28.  Here, the value of Plaintiff's rescission claim is equal to $72,235.88, the total sales price of the Vehicle. *See* Am. Compl. ¶ 16.  This amount would satisfy the amount-in-controversy requirement under the MMWA.  However, Defendant argues that Plaintiff is not entitled to rescission for two reasons:  (1) Plaintiff does not allege that Defendant is in privity of contract with Plaintiff; and (2) even if Plaintiff were entitled to rescission, his "continued use of the Vehicle over the last eight-and-a-half years would be entirely inconsistent with any such claim." *See* Defs.' Mem. at 5.

As to Defendant BMW's first argument, its counsel submits that under either New York or New Jersey state law, rescission cannot be had absent privity of contract between the parties. *See id.* at 4-5 & n.5.  Defendant argues that there is no privity of contract here because Plaintiff purchased the Vehicle from a third-party dealership, BMW Prestige, and not directly from Defendant. *See id.* at 5 (citing Am. Compl. ¶ 15).  Plaintiff appears to concede the lack of privity between the parties and argues that the remedy of rescission is available to him, "notwithstanding the lack of privity." *See* Pl.'s Opp'n at 6.  Plaintiff's opposition does not provide a legal basis to support a claim for rescission against a party that is not in privity of contract with the injured party. *See id.* at 5-6.  Plaintiff cites *Shuldman v. Daimler Chrysler Corp.* for the proposition that the absence of privity "does not bar application of the remedy of *revocation of acceptance* for breach of a limited warranty under the MMWA." *Id.* at 6 (citing

*Shuldman v. Daimler Chrysler Corp.*, 1 A.D. 3d 343, 344-45, 768 N.Y.S.2d 214, 216 (App. Div. 2003)) (emphasis added). However, the *Shuldman* case does not address the issue of whether the absence of privity bars application of a rescission remedy. On the other hand, Defendant cites *Jesmer v. Retail Magic, Inc.* which involves a rescission claim asserted by a grocery store owner based upon the purchase of a computer system from a distributor of the developer of the system. *Jesmer v. Retail Magic, Inc.*, 55 A.D.3d 171, 173-183, 863 N.Y.S.2d 737, 739-45 (App. Div. 2008). Ruling on a motion to dismiss, the court in *Jesmer* held that no contractual relationship existed between the plaintiff and the developer because the plaintiff purchased the computer system from a distributor, and consequently affirmed dismissal of a rescission claim against the developer. *See id.* at 182-83, 863 N.Y.S. 2d at 745. Defendant also cites *Pyskaty* where the plaintiff purchased a certified pre-owned BMW from Wide World of Cars, LLC, an automobile dealership. *See Pyskaty*, 856 F.3d at 218-220. The Second Circuit in *Pyskaty* held that the plaintiff's rescission claim, which exceeded $50,000, was a sufficient basis to confer jurisdiction pursuant to the MMWA. *Id.* at 227-30. Defendant distinguishes the instant case from *Pyskaty* because in that action, the plaintiff asserted his rescission claim against the direct seller of the vehicle with whom the plaintiff was in contractual privity, whereas here, Plaintiff does not seek rescission from the seller of the Vehicle at issue. *See* Def.'s Mem. at 4 n.5. The Court agrees and does not find the remedy of rescission to be available against Defendant here because the Amended Complaint alleges that the Vehicle was purchased from Prestige BMW, a third-party, and not the Defendant. *See* Am. Compl. ¶ 15; *Jesmer*, 55 A.D.3d at 182-83, 863 N.Y.S.2d at 745.

### c.      Revocation of Acceptance

"[P]rivity of contract is not required for a plaintiff to assert a cause of action for revocation of acceptance as against the manufacturer." *Kolle v. Mainship Corp.*, No. 04CV711, 2006 WL 1085067, at *7 (E.D.N.Y. Apr. 20, 2006). "The MMWA makes a warrantor directly liable to a consumer for breach of a written warranty, regardless of privity." *Id.* (citing *Shuldman*, 1 A.D.3d at 345, 768 N.Y.S.2d at 214). Revocation of acceptance is an available remedy if the buyer accepted a nonconforming good "whose nonconformity substantially impairs its value to him" and "his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." *See* N.Y.U.C.C. § 2-608(1). A plaintiff "must also revoke his acceptance within a reasonable time and 'before any substantial change in the condition of the goods which is not caused by their own defects.'" *See Kolle*, 2006 WL 1085067, at *7 (citing N.Y.U.C.C. § 2-608(2)).

Defendant argues that Plaintiff's claim for revocation fails because (1) Plaintiff did not allege the Vehicle's excessive oil consumption to be a substantial impairment since this defect only caused Plaintiff to add additional engine oil in between service visits, (2) Plaintiff could have reasonably discovered the defect because the Amended Complaint alleges there were oil consumption complaints "all over the internet – 'a hot topic' – as of September 2011, approximately four months before [Plaintiff] purchased the vehicle," and (3) Plaintiff's revocation of acceptance was not made within a reasonable time since Plaintiff's revocation letter was dated nearly six years after Plaintiff claimed to have first discovered the alleged defect. *See* Def.'s Mem. at 6-7. In response, Plaintiff argues the Vehicle's value was substantially impaired by pointing to the following allegations in the Amended Complaint: (a) Plaintiff had to add engine oil in between the recommended oil change intervals to prevent the engine from

failing, Am. Compl. ¶ 20, (b) the cost to replace the engine ranges from $12,500 to $15,000, *id.* ¶ 21, (c) Plaintiff has spent $3,700 related to the Vehicle's oil consumption, *id.* ¶ 22, (d) "[t]he oil consumption defect experienced by Plaintiff substantially impairs the use, value, and safety of the Vehicle to the Plaintiff," *id.* ¶ 71, (d) Plaintiff would have either not purchased the Vehicle or paid significantly less for it had he known he would be required to regularly purchase and add engine oil, *id.* ¶ 73, and (e) the defect is a safety concern "because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated," *id.* ¶ 65.  *See* Pl.'s Opp'n at 7 (citing Am. Compl. ¶¶ 20-22, 65, 71, 73). Plaintiff then argues that he "was not able to discover the non-conformity when he bought his car, when he first noticed excessive oil consumption, or when he first complained to a BMW dealer" because the dealership told Plaintiff the consumption was normal.  *See id.*  For those same reasons, Plaintiff contends that his revocation of acceptance was timely.  *See id.* at 8, 10-11.

To the extent that Plaintiff argues the value of the Vehicle was substantially impaired, the allegations regarding this element of a rescission claim are scarce and hypothetical.  Plaintiff has not alleged how adding extra oil/accumulating out-of-pocket costs or the hypothetical price to replace the engine have substantially impaired the Vehicle's value.  As to the other allegations to which Plaintiff draws the Court's attention, it appears that Plaintiff continued to drive the Vehicle after becoming aware of its defect since Plaintiff had to "regularly add[] quarts of oil to his car in between oil changes."  Am. Compl. ¶ 2; *see id.* ¶¶ 17, 34.  Based upon the allegations that Plaintiff had to "regularly" add oil, which indicates Plaintiff continued to drive the Vehicle, the Amended Complaint does not indicate that Plaintiff's use of the Vehicle was impaired, nor that the Vehicle presented a significant safety concern to him.  In addition, the Court notes the

absence of any allegation in the Amended Complaint that Plaintiff "tendered possession of the [Vehicle] to the seller."  *See Kolle*, 2006 WL 1085067, at *8 (citing *Curtis v. Fordham Chrysler Plymouth, Inc.*, 81 Misc.2d 566, 568, 364 N.Y.S.2d 767 (Civ. Ct. Bronx County 1975)).

"Revocation of acceptance is untimely and unreasonable when a buyer continues to use goods purchased from a seller and treats them in a manner inconsistent with revocation after it becomes clear that the deficiencies in the goods cannot be cured to the buyer's satisfaction." *Friedman v. General Motors Corp.*, 721, F. Supp. 2d 218, 226 (E.D.N.Y. 2010) (citing *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 75 (2d Cir.1986)).  Although Plaintiff purchased the Vehicle in January 2012, it was not until six years later, in July 2018, that Plaintiff sent Defendant a letter revoking her acceptance of the Vehicle.  *See* Am. Compl. ¶¶ 15, 23.  Essentially, Plaintiff argues that his revocation was timely because when he initially complained to a BMW dealer about the Vehicle's oil consumption within the first few months of ownership, he was advised that such consumption was normal and that a repair would not be offered.  However, these allegations are insufficient to render Plaintiff's revocation timely because the Plaintiff waited six years to finally revoke acceptance of the Vehicle after being informed no repairs were offered to fix the defect -- despite the oil consumption issue being a "hot topic" in consumer forums as early as September 2011 -- months prior to Plaintiff's purchase.

Defendant cites *Johns-Pratt v. BMW of North America, LLC*, a different case filed by Plaintiff's current counsel which also pertains to excessive oil consumption in a BMW vehicle. *See* Def.'s Reply at 2 (citing *Johns-Pratt v. BMW of North America, LLC*, No. 18-cv-01799, 2020 WL 1923238, at *5 (D. Conn. April 21, 2020)).  Although *Johns-Pratt* did not involve a revocation of acceptance claim, the court held that the plaintiff "should have known about [the

oil consumption defect] prior to purchase through the use of routine due diligence prior to making a major purchase." *Johns-Pratt*, 2020 WL 1923238, at *5. The court specifically pointed to the information in the consumer forums in 2011 which pre-dated the *Johns-Pratt* plaintiff's purchase of his vehicle. *Id.* This same information negates Plaintiff's claim that he could not have discovered the defect at the time the Vehicle was tendered to him. Accordingly, the Court finds that Plaintiff's revocation was neither timely nor reasonable to sustain a claim for rescission. *See Freidman*, 721 F. Supp. 2d at 226-27; *Kolle*, 2006 WL 1085067, at *8.

### d.      Incidental and Consequential Damages

Plaintiff argues that he "is also entitled to recover incidental and consequential damages." *See* Pl.'s Opp'n at 5 (citing N.Y.U.C.C. § 2-715). Plaintiff does not elaborate as to why he is entitled to these types of damages nor does he provide a figure as to the amount of such damages in either his opposition or in the Amended Complaint. *See generally id.*; *see also* Am. Compl. ¶ 109 ("As a direct and proximate result of the failure of the Defendant to comply its obligations under the express warranty, Plaintiff has suffered actual and consequential damages.") and ¶ 118 ("As a result of Defendant's breaches of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.").

Section 2-715 of the U.C.C states that incidental damages "include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." N.Y.U.C.C. § 2-715(1). In addition, § 2-715 states that consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;

and . . . injury to person or property proximately resulting from any breach of warranty." *Id.* § 2-715(2).

To the extent the Amended Complaint alleges Plaintiff suffered any incidental or consequential damages, the Court considers Plaintiff's $3,700 out-of-pocket costs for repairs associated with the Vehicle's oil consumption to fall within these categories. Defendant concedes Plaintiff's damages for incidental and consequential damages amount to this $3,700, but argues that the New Vehicle Limited Warranty "conspicuously disclaim[s] such damages." *See* Def.'s Mem. at 8; *see also* Def.'s Reply at 3 & n.3 ("Whether the BMW Warranty conspicuously, and thus validly, disclaimed such damages is a question of law to be determined by the Court. The applicable portion of BMW's Warranty is located at Dkt. No. 19-1 at 27."). The Court confirmed that the New Vehicle Limited Warranty specifically excludes "incidental and consequential damages" for any breach of an express or implied warranty. *See* New Vehicle Limited Warranty at 22. Nowhere in Plaintiff's opposition does he argue that the Warranty does not disclaim incidental or consequential damages, which are limitations that warrantors can permissibly implement. *See City of New York v. Bell Helicopter Textron, Inc.*, No. 13 CV 6848, 2015 WL 3767241, at *5-9 (E.D.N.Y. June 16, 2015). However, even if the Court were to find that Plaintiff was able to recover such damages in the amount of $3,700, Plaintiff is not able to satisfy the MMWA's amount-in-controversy requirement of $50,000 for the reasons which follow below.

### e.        Punitive Damages

Generally, punitive damages claims are subjected to heightened scrutiny when they are being asserted to satisfy an amount-in-controversy requirement. *See Pyskaty*, 856 F.3d at 225; *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972), *aff'd,* 414 U.S. 291 (1973).

"[P]unitive damages are recoverable under the MMWA if they would be recoverable in a breach-of-warranty action brought under governing state law." *Pyskaty*, 856 F.3d at 225. "Although the N.Y.U.C.C. does not 'indicat[e] that punitive damages are an element of recovery that is available in breach of warranty cases,' New York courts have assessed claims for punitive damages arising from a breach of warranty under the standard applicable to punitive damages claims arising from a breach of contract." *Id.* (citing *European Am. Bank v. Superior Auto Sales, Inc.*, 266 A.D.2d 69, 69, 698 N.Y.S.2d 630, 631 (App. Div. 1999); *Krohn v. Agway Petroleum Corp.*, 168 A.D.2d 858, 859-60, 564 N.Y.S.2d 797, 799 (App. Div. 1990)). There are four elements necessary to establish entitlement to an award of punitive damages: "(1) [the] defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ; (3) the egregious conduct must be directed to [the] plaintiff; and (4) it must be part of a pattern directed at the public generally." *Id.* at 225-26 (quoting *N.Y. Univ. v. Cont'' Ins. Co.*, 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (1995)) (omissions and alterations in original). With respect to the fourth element, the New York Court of Appeals has "invoked [a] . . . distinction between 'a gross and wanton fraud upon the public' and 'an isolated transaction incident to an otherwise legitimate business.'" *Id.* (quoting *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 95 (2d Cir. 2005)). An isolated transaction incident to an otherwise legitimate business "does 'not constitute conduct aimed at the public generally.'" *Id.* (quoting *TVT Records*, 412 F.3d at 95).

Defendant argues that it did not engage in any conduct directed towards Plaintiff since it did not sell the Vehicle to Plaintiff nor service it. *See* Def.'s Mem. at 9. Defendant then contends that it was not egregious or malicious not to inform Plaintiff of the defect, which Plaintiff should have known about prior to purchasing the Vehicle through the use of routine due

diligence. *See id.* Defendant then focuses on the fourth element of a punitive damages claim, arguing that "[a]t most, Plaintiff has alleged 'an isolated transaction incident to an otherwise legitimate business,' *i.e.*, an individual breach of the warranty pertaining to his individual Vehicle." *Id.* (quoting *Pyskaty*, 856 F.3d at 226). In response, Plaintiff contends that he has pleaded entitlement to punitive damages in the amount of $56,100 based upon the following allegations in the Amended Complaint:

> Plaintiff alleges that BMW was aware at all times that his vehicle and others containing the defective N63 engines suffered from an increased risk of engine failure, (Am. Compl. ¶¶5, 41-47, 66), but nonetheless concealed that fact from the Plaintiff at the time of sale and during each subsequent instance where the Plaintiff sought warranty repairs from BMW's authorized dealership and complained about the excessive engine oil consumption, instead claiming the vehicle was normal, although BMW knew of the defect as early as 2008. (*Id.* ¶¶2-4, 18-19). This egregious conduct was directed not only at the Plaintiff, but was part of the pattern directed at the BMW consumers generally, where BMW took active steps evidencing its intent to deceive its customers by concealing the defect where it instructed dealers to overfill engines with oil (*id.* ¶¶52), where it reduced the oil change intervals (*id.* ¶¶53- 55), and where it issued a TSB as part of a campaign to conceal the oil consumption defect and represent it as a normal feature of BMW vehicles (*Id.* ¶¶49-55).

*See* Pl.'s Opp'n at 6, 8.

In *Pyskaty*, the defendant automobile dealership represented to the plaintiff purchaser of a certified pre-owned BMW that the vehicle had no accident history, was perfect, and had a clean CARFAX report. *See Pyskaty*, 856 F.3d at 219. Within a week after purchasing the vehicle, the plaintiff began experiencing problems while driving the vehicle, and the problems progressively worsened in the following months. *Id.* at 220. The plaintiff began to suspect that the vehicle was damaged in an accident before she purchased it, contrary to the CARFAX report the dealership showed her. *Id.* The plaintiff later obtained an AutoCheck report which confirmed that the vehicle was actually involved in a rear-impact collision prior to plaintiff's purchasing it.

27

*See id.*  The Second Circuit affirmed the district court's ruling that the *Pyskaty* plaintiff did not

state a claim for punitive damages because the plaintiff alleged an isolated incident that did not

constitute a gross and wanton fraud upon the public.  *See id.* at 226.  In addition, the Second

Circuit found that the allegations in the *Pyskaty* plaintiff's amended complaint speculatively

claimed that the defendant dealership "regularly" induced customers to purchase vehicles based

on false or inaccurate information.  *See id.*  The court noted that the "amended complaint

contains no allegations of fact which, if true, would suggest that [the dealership] has engaged in

similarly fraudulent transactions on other occasions or that [plaintiff] has a good-faith basis for

claiming that it does so on a 'regular and recurring basis.'"  *See id.*

The Second Circuit's *Pyskaty* decision is indicative of the high bar that a plaintiff must

overcome to demonstrate entitlement to punitive damages under the MMWA.  Similar to the

plaintiff in *Pyskaty*, the Amended Complaint speculatively alleges that Defendant claimed to its

customers generally that excessive oil consumption was normal in its vehicles.  *See* Am. Compl.

¶ 48 ("Defendant, however, failed to disclose the defect to consumers prior to or at the time of

purchase or lease."), ¶ 54 ("Defendant continued to misrepresent to its customers that the rate of

oil consumption in the N63 engines was normal and to be expected in engines that are fitted with

turbocharges.").  Based upon the allegations in the Amended Complaint that are not indicia of

conduct by the Defendant which amounts to a "gross and wanton fraud upon the public" nor are

supportive of a right to punitive damages that is beyond the speculative level, Plaintiff cannot use

punitive damages to meet the MMWA's amount in controversy requirement.  Accordingly, the

Court concludes that Plaintiff cannot demonstrate to a legal certainty that he could recover

alleged damages to satisfy the MMWA's $50,000 jurisdictional minimum.  Consequently, this

Court respectfully recommends to Judge Seybert that Plaintiff's MMWA claims be dismissed.

### 2.    *Diversity Jurisdiction*

Defendant also seeks dismissal of the Amended Complaint for lack of diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  *See* Def.'s Mem. at 3, 10.  To establish diversity jurisdiction, a plaintiff must demonstrate that no plaintiff is a citizen of the same state as any defendant and that the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a). Defendant's motion does not contend, nor does the Court find, that complete diversity is lacking between the parties.  Rather, Defendant focuses on § 1332's amount in controversy requirement, which is higher than the requirement imposed by the MMWA.  Defendant summarily argues that if the Court does not find Plaintiff to have established the amount in controversy under the MMWA, the Court should likewise find that Plaintiff cannot meet § 1332's threshhold.  *See* Def.'s Mem. at 10 ("[I]nasmuch as Plaintiff has failed to meet the amount in controversy under the MMWA he has also failed to establish the amount in controversy under Section 1332.").

In addition to the damages discussed above, the Court also notes that Plaintiff seeks economic damages for his N.Y.G.B.L. § 349 claim as well as attorney's fees pursuant to that provision.  *See* Pl.'s Opp'n at 5, 7; *see also Pyskaty v. Wide World of Cars, LLC*, No. 15 CIV. 1600, 2016 WL 828135, at *5 (S.D.N.Y. Feb. 23, 2016) (declining to consider the plaintiff's state law claims in determining whether the plaintiff meets the MMWA's amount-in-controversy requirement), *rev'd on other grounds*, 856 F.3d 216 (2d Cir. 2017).  Attorney's fees can be counted towards satisfying the amount-in-controversy threshold for diversity jurisdiction only if they are recoverable as a matter of right pursuant to a statute or contract.  *See Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp. 3d 807, 818 (S.D.N.Y. 2019) (citing *Ryan v. Legends Hospitality, LLC*, 2012 WL 3834088, at *2 (S.D.N.Y. Aug. 1, 2012)).

In light of the Court's findings that the damages discussed above are not available to Plaintiff, Plaintiff must demonstrate that his damages and attorney's fees pursuant to N.Y.G.B.L. § 349 exceed $75,000. Even assuming that Plaintiff's N.Y.G.B.L. § 349 claim is viable, § 1332's amount in controversy is still not met. Plaintiff does not allege a dollar amount for his N.Y.G.B.L. claim and "[t]he grant of attorneys' fees under section 349(h) is discretionary. . . . [T]he size of the possible fee award is purely speculative at this time." *See Squillante v. Cigna Corp.*, No. 12 CIV. 6003, 2012 WL 5974074, at *4 (S.D.N.Y. Nov. 28, 2012). In addition, Plaintiff does not even argue that his damages and attorney's fees pursuant to N.Y.G.B.L. § 349 are a standalone basis to confer diversity jurisdiction. Rather, Plaintiff asserts that these amounts "[w]hen combined with Plaintiff's other damages" which Plaintiff valued at $74,800 ("$18,700 compensatory damages" plus "$56,100" in punitive damages), exceed $75,000. *See* Pl.'s Opp'n at 6-7. "Because Plaintiff's request for relief is speculative, it is insufficient to meet the amount in controversy required for the Court to exercise diversity jurisdiction over this matter." *See Trisvan v. Kentucky Fried Chicken Corp.*, No. 20-CV-2071, 2020 WL 7404434, at *6 (E.D.N.Y. Dec. 17, 2020) (citing *Centra Devs. Ltd. v. Jewish Press Inc.,* No. 16-CV-6737, 2018 WL 1788148, at *5 (E.D.N.Y. Feb. 20, 2018)). Accordingly, the Court finds that Plaintiff has not established to a legal certainty that § 1332's amount-in-controversy requirement has been met in order to confer diversity jurisdiction.

### B.    Remaining State Law Claims

In light of the Court's recommendations that Plaintiff's federal claims pursuant to the MMWA be dismissed and that this Court does not have diversity jurisdiction, the only remaining causes of action here are brought pursuant to state law. Although the Court could exercise its supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. § 1367, the

Court does not find that there is a compelling reason to do so here.  *See Wood v. Gen. Motors Corp.*, No. CV 08-5224, 2010 WL 3613812, at *12 (E.D.N.Y. Aug. 23, 2010), *report and recommendation adopted*, 2010 WL 3613809 (E.D.N.Y. Sept. 15, 2010).  On this basis, the Court respectfully recommends to Judge Seybert that the Court decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.[3]

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Defendant's motion to dismiss be GRANTED in accordance with this Report and Recommendation.

---

[3]    In light of the recommendations that Plaintiff's federal claims pursuant to the MMWA be dismissed and that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court need not address the aspects of Defendant's motion which seek dismissal pursuant to Rule 12(b)(6).  Consequently, the *Harris* decisions cited by Plaintiff in his Notice of Supplemental Authority are not relevant to the determination of Defendant's motion.  The *Harris* decisions do not address jurisdiction pursuant to the MMWA or § 1332, but focus on summary judgment arguments related to statutes of limitations and whether the plaintiff's claims failed as a matter of law.  The *Harris* rulings could be considered as persuasive authority when analyzing the Amended Complaint pursuant to Rule 12(b)(6); however, the Court need not reach that issue.  Therefore, based on the irrelevancy of the *Harris* rulings to this instant motion, the Court respectfully recommends to Judge Seybert that the Defendant's motion [DE 31] to strike the supplemental authority supplied by the Plaintiff be GRANTED.

## VI.    <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **<u>A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections</u>**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

<b>SO ORDERED.</b>

Dated: Central Islip, New York
      February 23, 2021

              /s/ A. Kathleen Tomlinson
              A. KATHLEEN TOMLINSON
              U.S. Magistrate Judge